IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Bill Hall Company, Limited Partnership, ) <br> Plaintiff, ) <br> v. ) <br> ) <br> Shaw Environmental & Infrastructure, Inc., ) <br> Defendant. ) <br> _____ ) | Civil Action No.: 2:09-CV-02187-MBS <br><br> **ORDER AND OPINION** |

Plaintiff Bill Hall Company, Limited Partnership filed the within action against Defendant Shaw Environmental and Infrastructure, Inc. on July 10, 2009 alleging claims of trespass and negligence. On August 17, 2009, the case was removed to federal court. The case is before the court on Defendant's motion for summary judgment and motion *in limine* to exclude expert testimony and opinions, which were both filed on September 17, 2010. Plaintiff filed a response to both motions on October 4, 2010. In its response, Plaintiff withdrew its trespass claim. Pl. Resp. at 5 n.4. Defendant replied regarding its motion for summary judgment on October 8, 2010. On October 26, 2010, the court held a hearing on Defendant's motion for summary judgment and *motion in limine*.

## FACTS

In December 1993, a leak was detected in a pipeline transporting jet fuel from the fuel terminal at the Defense Energy Support Center ("DESC")(formerly the Defense Fuel Supply Center) to the Charleston Air Force Base ("CAFB"). Compl. ¶ 4, Mot. Summ. J., Ex. A at 2. The leak resulted in the contamination of the surrounding soil and groundwater. Compl. ¶ 4, Mot. Summ. J., Ex. A at 2. Plaintiff owns real property adjacent to the CAFB, located at 6643 Jet Park Drive. Compl. ¶ 3.

DESC contracted with Defendant to conduct remediation activities on the CAFB. Compl. ¶¶ 5-6. In this role, Defendant submitted to SCDHEC quarterly reports of the findings and assessments from the investigation. Mot. Summ. J., Ex. B at 5. SCDHEC reviewed the reports and made conclusions about the contamination, the investigation, and the required response. Mot. Summ. J., Ex. C. In the early stages of the investigation, Defendant took various samples at the CAFB and created a system for monitoring the conditions around the leak. Mot. Summ. J., Exs. B, D.

A May 13, 2003 letter from SCDHEC Hydrologist Michael A. Bishop ("Bishop") to DESC indicates that the contaminant plume at the CAFB had not yet been completely defined. Mot. Summ. J., Ex. E at 1. The letter states: "[o]f particular concern is the lack of groundwater sampling data from the area north of MW-10 [Monitoring Well 10] and south of the perimeter fence (MW- 1, 2 & 4). The lack of plume definition should be considered when implementing your plan for corrective action at this facility." *Id.* MW-10 is located south of the fence separating CAFB from Plaintiff's property and north of a ditch on the CAFB. *See* Mot. Summ. J., Ex. D at 2-7. A June 30, 2003 letter from Bishop to DESC states, verbatim, SCDHEC's concerns from the May 13, 2003 letter. Mot. Summ. J., Ex. E at 2. By letter dated August 25, 2003, Bishop again states SCDHEC's concerns about the definition of the contaminant plume and states: "The Department requests that you address the concerns listed above prior to submittal of the next sampling report. A response should be submitted no later than October 30, 2003." Mot. Summ. J., Ex. E at 3. E. Wayne Stuart ("Stuart"), Defendant's Program Manager, states in his declaration that "SCDHEC requested that DESC (through [Defendant]) expand the investigation to include obtaining samples from [Plaintiff's] property. . . ." Mot. Summ. J., Ex. I ¶ 4; *see also* Mot. Summ. J., Ex. A (letter from DESC stating:

"[SC]DHEC requested DESC and [Defendant] conduct supplemental investigations during March 2004 and November 2005. The purpose of these investigations was to further confirm/delineate the limits of contamination southeast toward Runway 15 and northeast toward . . . 6643 Jet Park Drive. . . ."). Stuart further declares that "DESC[] and [Defendant] objected to the SCDHEC request and argued that additional sampling on [Plaintiff's] property was not necessary; however, SCDHEC persisted in its position and ultimately demanded that the sampling on [Plaintiff's] property, which was occupied by Horizon Freight Systems [, Inc. (HFS)] be performed." Mot. Summ. J., Ex. I ¶ 5. Bishop declares that SCDHEC concluded on its own that the contamination plume had not been fully defined prior to the testing on Plaintiff's property, and that SCDHEC required DESC and Defendant to expand the sampling area beyond the CAFB, onto Plaintiff's property. Def. Reply, Bishop Decl. ¶ 10, 11, 13.

On December 11, 2003, Shaw obtained permission to conduct testing on Plaintiff's property from Mr. Brian Davis of HFS, the occupant and leaseholder of Plaintiff's property. Mot. Summ. J., Exs. A at 2; H ¶ 2; I ¶¶ 7-8. Bishop declares that "if [Plaintiff] or any other party had refused to grant access to the property for testing and sampling, SCDHEC would exercise its authority to seek an inspection warrant from the appropriate South Carolina Magistrate Court or exercise other legal means to obtain the necessary samples." Bishop Decl. ¶ 14. On February 4, 2004, Amar Bumb ("Bumb"), an employee of Defendant, submitted to Bishop an application to install ten soil borings to delineate the vertical and horizontal extent of the contamination plume and obtain the requested data regarding the area north of MW-10. Mot. Summ. J., Ex. F at 1. On February 23, 2004, Bishop approved the soil borings on Plaintiff's property. Mot. Summ. J., Ex. G at 1-2. Bishop's letter states: "The Department is pleased that this work is being proposed in an effort to close the data gaps

3

north of MW-10." *Id.* at 1.

In March 2004 and November 2005, a sampling team led by one of Defendant's employees coordinated with DESC, SCDHEC, and HFS to enter Plaintiff's property and collect samples. Mot. Summ. J., Exs. B at 2; I. ¶¶ 9-10. Defendant then had the samples analyzed in a laboratory and generated reports of the sampling and analysis which were submitted to SCDHEC. Mot. Summ. J., Ex. J. The sampling and analysis confirmed the presence of contamination on Plaintiff's property. Mot. Summ. J., Ex. I ¶ 12. SCDHEC reviewed the information and concluded that there was contamination on Plaintiff's property. Mot. Summ. J., Ex. H ¶ 4; Def. Reply, Ex. A ¶ 15.

On July 11, 2006 Bishop sent a letter to Plaintiff to "verify a release of petroleum products at [Plaintiff's] property." Mot. Summ. J., Ex. K. The letter states that "groundwater samples [from Plaintiff's property] exhibited Benzene and Naphthalene levels in excess of established regulatory limits." *Id.* The letter indicates that this is a violation of the South Carolina Pollution Control Act and states that Plaintiff must respond by September 8, 2006 with either a proposal for work to stabilize the conditions or a proposal to conduct initial assessment activities. *Id.* Plaintiff allegedly first learned of the contamination from this letter. Pl. Resp. at 2.

The parties agree that Defendant did not cause or introduce any contamination onto Plaintiff's Property. Mot. Summ. J., Ex. H ¶ 1. Plaintiff seeks the following damages: 1) $52,626.73 for geological and engineering services; 2) $24,630.07 for environmental legal services; 3) $272,000.00 for property devaluation (*see* Entry 37-1); 4) $4,750.00 for a property appraisal; and 5) other unspecified damages. Pl. Resp. at 3.

# DISCUSSION

I. **Summary Judgment Standard**

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In ruling on a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990). The non-moving party may not oppose a motion for summary judgment with mere allegations or denials of the movant's pleading, but instead must "set forth specific facts" demonstrating a genuine issue for trial. Fed. R. Civ. Pro. 56(e); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991). All that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 249. "Mere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995).

II. **Negligence Claim**

To establish negligence, a party must prove the following three elements: 1) a duty of care owed by the defendant to the plaintiff; 2) breach of that duty by a negligent act or omission; and 3)

damages proximately resulting from the breach of duty. *Fowler v. Hunter*, 697 S.E.2d 531, 534 (S.C. 2010).

### A. Duty

The first question is whether Defendant owed Plaintiff a duty. "Whether [a] defendant is under a legal duty to [a] plaintiff is a question of law for the court[.]" *Sharpe v. S.C. Dep't of Mental Health*, 354 S.E.2d 778, 781 (S.C. Ct. App. 1987)(Bell, concurring)(citing *Rogers v. Atlantic Coast Line Railroad Co.*, 71 S.E.2d 585 (S.C. 1952). Generally speaking, "[a]n affirmative duty exists only if imposed by statute, contract, relationship, status, property interest, or some other special circumstance." *Carolina Chem., Inc. v. S.C. Dep't of Health and Env. Control*, 351 S.E.2d 575, 578 (S.C. Ct. App. 1986). If there is no duty, the defendant is entitled to judgment as a matter of law. *Huggins v. Citibank, N.A.*, 585 S.E.2d 275, 276 (S.C. 2003) (citing *Simmons v. Tuomey Reg. Med. Ctr.*, 533 S.E.2d 312 (2000)). Duty generally is defined as "the obligation to conform to a particular standard of conduct toward another." *Id.* (citing *Hubbard v. Taylor*, 529 S.E.2d 549, 552 (S.C. 2000)) In order for negligence liability to attach, the parties must have a relationship recognized by law as the foundation of a duty of care. *Id.* (citing *Ravan v. Greenville County*, 434 S.E.2d 296 (S.C. Ct. App. 1993))

Plaintiff first alleges that Defendant had a duty to identify Plaintiff as the record owner of the property and obtain its express permission prior to conducting environmental tests. In support of its contention, Plaintiff relies upon the opinions of two of its experts experts, Nina Marshtein ("Marshtein") and Raymond Knox ("Knox"). Marshtein and Knox have stated their opinion "that it is standard practice for environmental professionals [or other third parties] to obtain permission from a property owner prior to entering and conducting environmental testing on their property."

6

Entry 37- at 1, 3. Marshtein cites South Carolina Code Section 48-1-50(24) in support of her opinion. This code section states:

> The Department may:
>
> . . .
>
> > (24) Enter at all times in or upon any property, public or private, for the purpose of inspecting and investigating conditions relating to pollution or the possible pollution of the environment of the State. Its authorized agents may examine and copy any records or memoranda pertaining to the operation of a disposal system or source that may be necessary to determine that the operation thereof is in compliance with the performance as specified in the application for a permit to construct; provided, however, that **if such entry or inspection is denied or not consented to, and no emergency exists, the Department is empowered to and shall obtain from the magistrate from the jurisdiction in which such property, premise or place is located, a warrant to enter and inspect** any such property, premise or place prior to entry and inspection. The magistrate of such jurisdiction is empowered to issue such warrants upon a proper showing of the needs for such entry and inspection. The results of any such inspection and investigation conducted by the Department shall be reduced to writing and a copy shall be furnished to the owner or operator of the source or disposal system;

*Id.* (emphasis added). The court discerns nothing in the plain language of the statute that required Defendant, as designee for SCDHEC, to obtain permission from the record owner or any other person on the land in order to enter the property for the purpose of inspecting and investigating possible pollution on the property. Section 48-1-50(24) provides that SCDHEC, and therefore its designee, is authorized to enter any public or private property at any time, and, if challenged, to obtain a warrant to enter the property. Moreover, Plaintiff's position would subvert SCDHEC's mandate to abate, control, and prevent pollution in order to maintain reasonable environmental standards "consistent with the public health, safety and welfare of [South Carolina's] citizens,

7

maximum employment, the industrial development and protection of terrestrial and marine flora and fauna, and the protection of physical property and other resources." S.C. Code Ann. § 48-1-20. DHEC's grant of authority reflects a legitimate exercise of the state's police power. *See S.C. Dep't of Healt & Env. Control v. Armstrong*, 359 S.E.2d 302 (S.C. App. 1997). The court concludes as a matter of law that Defendant had no duty to obtain Plaintiff's permission to enter the property and conduct environmental testing.

Plaintiff also contends that Defendant owed a duty to notify Plaintiff of any contamination found. To the contrary, the statutory scheme references only that SCDHEC is obligated to provide notice of contamination to the "owner or operator of the source[.]" S.C. Code Ann. § 48-1-50(24). This is to put the "owner or operator of the source" on notice of its obligation to correct the pollution and otherwise report to SCDHEC. *Id.* §§ 48-1-20, 48-1-50(22). The court concludes as a matter of law that Defendant had no duty to notify Plaintiff of any contamination found. Defendant's duty in this regard was to SCDHEC pursuant to the relationship between SCDHEC and Defendant.

Plaintiff further contends that Defendant owed a duty to conduct its testing activities in a reasonable manner in accordance with industry standards. The duty of care is that standard of conduct the law requires of an actor in order to protect others against the risk of harm from his actions. "It embodies the principle that the plaintiff should not be called to suffer a harm to his person or property which is foreseeable and which can be avoided by the defendant's exercise of reasonable care." *Snow v. City of Columbia*, 409 S.E.2d 797, 803 (S.C. Ct. App. 1991) (citing *Carolina Winds Owners' Association, Inc. v. Joe Harden Builder, Inc.*, 374 S.E.2d 897 (S.C. Ct. App.1988)). A cogent argument could be made that Defendant had a duty to Plaintiff not to unreasonably injure Plaintiff's property, such as by unnecessarily destroying timber or leaving large

8

holes in the ground. The court will assume for purposes of summary judgment that Defendant owed Plaintiff a duty to conduct its testing activities in a manner so as not to harm Plaintiff's property.

B. Breach of Duty

Plaintiff contends that Defendant breached a duty by "unreasonably and unnecessarily overextend[ing] its assessment onto the Hall property." Pl. Resp. at 6. The court disagrees. Plaintiff's theory of breach is outside the scope of duty allegedly owed by Defendant to not injure Plaintiff's property. Moreover, even if Defendant owed Plaintiff a duty to not "overextend its assessment," Defendant, as designee of SCDHEC, made legitimate use of SCDHEC's authority and therefore did not breach any purported duty as defined by Plaintiff. SCDHEC is empowered to "[c]onduct studies, investigations and research with respect to pollution abatement, control or prevention," S.C. Code Ann. § 48-1-50(6); "[c]onduct investigations of conditions in the air or waters of the State to determine whether or not standards are being contravened and the origin of materials which are causing the polluted condition," *id.* § 48-1-50(20); [e]nter at all times in or upon any property, public or private, for the purpose of inspecting and investigating conditions relating to pollution or the possible pollution of the environment of the State," *id.* § 48-1-50(24). There is no foundation in the record to support a finding that Defendant wrongfully entered Plaintiff's property in order to verify the extent of pollution. Plaintiff's contention is without merit and contrary to the declared public policy of the State to abate, control, and prevent pollution.

C. Causation

Plaintiff argues that "'but for' [Defendant's] negligence in designing and implementing an unreasonable and unnecessary (i.e. negligent) plan that included testing on [Plaintiff's] property, contamination would not have been discovered on the property and [Plaintiff] would not have

suffered any of the damages that it has. . . ." Pl. Resp. at 8.

Proximate cause requires proof of causation in fact and legal cause. *Burnett v. Family Kingdom, Inc.*, 691 S.E.2d 170, 175 (S.C. Ct. App. 2010) (citing *Hurd v. Williamsburg County*, 611 S.E.2d 488, 492 (S.C. 2005)). Causation in fact is demonstrated by establishing the plaintiff's injury would not have occurred "but for" the defendant's negligence. *Id.* "Negligence . . . may be deemed a proximate cause only when without such negligence the injury would not have occurred or could have been avoided." *Hoard v. Roper Hosp., Inc.*, 694 S.E.2d 1, 5 (S.C. 2010) (citing *Hughes v. Children's Clinic, P. A.*, 237 S.E.2d 753, 757 (S.C. 1977)). Legal cause is shown by establishing foreseeability. *Burnett*, 691 S.E.2d at 175. An injury is considered foreseeable if it is the natural and probable consequence of a breach of duty. *Id.*

To be the proximate cause, an act need not be "the sole cause of the plaintiff's injury." *Mellen v. Lane*, 659 S.E.2d 236, 245 (S.C. Ct. App. 2008) (*Bishop v. S.C. Dep't of Mental Health*, 502 S.E.2d 78, 83 (S.C. 1998). Liability may be imposed on a defendant if his actions are the proximate concurring cause of the injury. *Id.* (citing *Matthews v. Porter*, 124 S.E.2d 321, 325 (S.C. 1962)). That two causes concur in an injury implies that they occur at the same time. *See, e.g., Totman v. A.C. and S., Inc.*, No. CIV. A. 00-5296, 2002 WL 393697, *4 (R.I. Super. Ct. Feb. 11, 2002) ("a proximate cause need not be the sole and only cause [of an injury] if it concurs and unites with some other cause which, acting at the same time, produces the injury."); *Jordan v. St. Louis Public Service Co.*, 103 S.W.2d 552, 558 (Mo. Ct. App. 1937) ("To constitute proximate cause the negligent act or omission need not be the sole cause, nor the last or nearest cause, but it is sufficient if it concurs with some other cause acting at the same time, which, in combination with it, produces the injury, or if it sets in motion a chain of circumstances and operates on them in a continuous

sequence, unbroken by a new or independent cause."). "Ordinarily, the question of proximate cause is one of fact for the jury and the trial judge's sole function regarding the issue is to inquire whether particular conclusions are the only reasonable inferences that can be drawn from the evidence." *Small v. Pioneer Machinery, Inc.*, 494 S.E.2d 835, 843 (S.C. Ct. App. 1997).

Plaintiff's causation argument is premised on the idea that the contamination would not have been discovered had it not been for Defendant's actions in coming onto the property without permission and conducting unnecessary testing. However, Bishop's declaration indicates that SCDHEC would have obtained testing on Plaintiff's property north of MW-10 whether performed by Defendant or not. The only reasonable conclusion from the undisputed facts of this case is that Plaintiff's claimed injuries were caused, not by Defendant's actions, but by the contamination. Defendant's actions are not a concurring cause of Plaintiff's claimed injuries because they did not occur at the same time as the contamination and did not contribute to the extent of Plaintiff's injuries. This is because the contamination caused the full extent of Plaintiff's injuries and without the contamination, Plaintiff would have no damages, regardless of whether Defendant conducted environmental tests on Plaintiff's property. Plaintiff has not established a genuine issue of fact for the jury with regard to causation.

## CONCLUSION

Defendant's motion for summary judgment (Entry 36) is **granted.** Defendant's motion *in limine* (Entry 37) is therefore, **moot.**

**IT IS SO ORDERED**.

s/ Margaret B. Seymour
United States District Judge

11

November 29, 2010
Columbia, South Carolina